Janet RITZA, Plaintiff,

and

Eddie Duenez, et al., Plaintiffs–Appellants,

v.

INTERNATIONAL LONGSHOREMEN'S AND WAREHOUSEMEN'S UNION, et al., Defendants–Appellees.

No. 86–6273.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted July 10, 1987.

Decided Jan. 11, 1988.

---

**366**

Eli M. Kantor, Beverly Hills, Cal., for plaintiffs-appellants.

Richard S. Zuckerman, Leonard, Carder & Zuckerman, San Francisco, Cal., Jan E. Eakins, Gibson, Dunn & Crutcher, Newport Beach, Cal., for defendants-appellees.

Before BROWNING, Chief Judge, FLETCHER and POOLE, Circuit Judges.

PER CURIAM:

Applicants for registration as Class "B" longshoreman seek damages and an injunction based on a claim that the process by which registrants are selected is tainted by nepotism and a failure to adhere to contractual procedures. The district court found that the applicants had not exhausted grievance procedures required by the collective bargaining agreement and that their failure to do so was not excused. The applicants appeal the dismissal of their action for failure to exhaust contractual remedies.

## BACKGROUND

Appellants are "casual" longshoremen whose applications for registration as Class "B" longshoremen in Port Hueneme, California were rejected (Class "B" applicants). Appellees are the Pacific Maritime Association (PMA), an association of West Coast stevedoring, shipping, and terminal companies; the International Longshoremen's and Warehousemen's Union (ILWU), the exclusive bargaining representative of longshoremen who work for PMA members; and ILWU, Local 46 (Local 46), a chartered, affiliated local with offices at Port Hueneme. Appellees are parties to the Pacific Coast Longshore Contract Document (Longshore Contract), which is the collective bargaining agreement governing the terms and conditions of employment for longshoremen. Section 17.1 of the Longshore Contract provides for the establishment of joint labor relations committees (LRC's)—a Joint Port LRC for each port, four Joint Area LRC's, and one Joint Coast LRC—which are made up of union- and employer-designated representatives.

Longshoremen are dispatched to jobs based on their registration status: Class "A" longshoremen are given first preference, Class "B" second preference, and unregistered or "casual" longshoremen are dispatched only after available work has been offered to Class "A" and "B" regis-

trants. Registration of longshoremen is controlled by the Joint Port LRC's, subject to oversight by the Joint Coast LRC, Longshore Contract § 8.31. Registration procedures are specified in the Coastwide Rules that were adopted in 1984 by the Joint Coast LRC and incorporated into the Longshore Contract. Section 11 of the Coastwide Rules provides that disputes involving registration must be remedied through exhaustion of grievance procedures set forth in the Longshore Contract before a judicial remedy may be sought.

Under the procedures applicable in this case, grievances are submitted initially to the Joint Port LRC. *Id.* § 17.41. Any party may appeal the Joint Port LRC's decision to the Joint Coast LRC, *id.* § 17.42, and may appeal the Joint Coast LRC's decision to the Coast Arbitrator. *Id.* § 17.43.

In February of 1985, the Port Hueneme LRC (a Joint Port LRC) received approval from the Joint Coast LRC to register 15 new Class "B" longshoremen. Forty applications were given out from which the fifteen registrants were tentatively selected. The Joint Coast LRC reviewed the results of the February registration and determined that they did not "achieve[ ] the desired objectives, particularly with respect to Title VII requirements concerning the registration of females." Accordingly, on February 22, 1985, the Joint Coast LRC halted the registration, and, on March 5, ordered that fifty more applicants be added to the pool and that the group selected satisfy Title VII requirements.

Subsequent to the Joint Coast LRC's halting of registration on February 22, Class "B" applicants submitted grievances regarding the registration to the Joint Port LRC.[1] They contended that the 1985 registration was carried out in violation of the procedures established in the Coastwide Rules, and in violation of various provisions of the Longshore Contract. The class "B" applicants claimed that the selection pro-

cess was designed to select, and did select, fifteen favored relatives of union members.

The second 1985 registration program resulted in the selection of the same fifteen people who had been selected in the first program. The Joint Coast LRC refused to approve the results, and no new Class "B" longshoremen were registered in 1985.

In April 1985, the Class "B" applicants commenced this proceeding by filing a class action complaint against the PMA, the ILWU, and Local 46 in district court for the Central District of California. Allegations included breach of the collective bargaining agreement by the PMA and of the duty of fair representation by the ILWU and Local 46, in violation of section 301 of the Labor Management Relations Act, 29 U.S.C. § 185; sex discrimination in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.;* a violation of civil rights under 42 U.S.C. § 1985(3); and a pendant state claim for breach of an oral contract. The Class "B" applicants sought compensatory and punitive damages as well as an order enjoining the registration of Class "B" longshoremen.

On May 22, 1985, Class "B" applicants filed for a preliminary injunction restraining the registration of the fifteen men selected by the Joint Port LRC and the selection of any Class "B" longshoremen in violation of the Coastwide Rules. The application for a preliminary injunction was withdrawn by stipulation based on the assurance that no Class "B" registration would take place without twenty-days notice to the Class "B" applicants.

On April 9, 1986, counsel for the Class "B" applicants wrote the Joint Port LRC stating that he understood that twenty-nine individuals were about to be selected for Class "B" registration and that he was appealing the failure to select sixteen of his clients. On April 21, the PMA's counsel informed the Class "B" applicants' counsel that 29 named individuals were "likely" to

---

**1.** The earliest dated grievance letter is February 23, 1985. Appellees contend that the February 22 directive to halt the registration was in response to grievances. Because the grievances post-date the directive, this contention appears

to be unfounded. It seems that the Joint Coast LRC's only concern was that no women had been selected and not, as the grievants complained, that procedural requirements had been violated in order to favor certain applicants.

be registered as Class "B" longshoremen within twenty-five days. The following day, the applicants formally appealed the Joint Port LRC's decision not to select them for Class "B" registration. On May 23, the Joint Port LRC responded that the grievances would not be considered because the registration process was not complete.

Meanwhile, on April 28, 1986, the second amended complaint in this action had been filed. It alleges only the section 301 and Title VII claims and is on behalf of named individuals rather than a class. Class "B" applicants' May 1 application for a preliminary injunction restraining registration was withdrawn on May 9 by stipulation when it was agreed that no registration would occur until after trial.

On May 19, 1986, the PMA, the ILWU, and Local 46 filed motions to dismiss or for summary judgment. On June 9, the district court entered an order granting the motion to dismiss and directing defendants' counsel to submit a proposed judgment and findings of fact and conclusions of law. In the judgment, entered on July 8 the district court held that the section 301 causes of action could not, "as a matter of law, be maintained as plaintiffs have failed to exhaust available contractual grievance procedures and their failure to do so is not excused." Accordingly, these causes of action were dismissed.[2] The Title VII action was dismissed with prejudice for plaintiffs' failure to show facts that suggested discriminatory treatment. The Class "B" applicants timely appeal, "seek[ing] review only of the district court's granting of summary judgment" for the causes of action based on section 301 of the LMRA.

## STANDARD OF REVIEW

The district court granted appellees' motion to dismiss or for summary judgment for failure to exhaust contractual grievance procedures. In their briefs before this court, both sides assume that the order appealed is one granting summary judgment. This assumption is understandable because the court's decision was based on submissions outside the pleadings. *See Williams v. Pacific Maritime Ass'n*, 384 F.2d 935, 936 (9th Cir.1967), *cert. denied*, 390 U.S. 987, 88 S.Ct. 1181, 19 L.Ed.2d 1290 (1968); *cf. Zuniga v. United Can Co.*, 812 F.2d 443, 449 (9th Cir.1987) (applying summary judgment analysis to trial determination of exhaustion of internal union remedies). However, we find nothing in the district court's order or findings of fact and conclusions of law indicating that summary judgment was granted. Rather, it appears that the district court dismissed the section 301 claims without prejudice.[3]

■ Furthermore, this court has held that failure to exhaust nonjudicial remedies is a matter in abatement, not going to the merits of the claim, and as such is not properly raised in a motion for summary judgment. *See Stauffer Chemical Co. v. Food & Drug Admin.*, 670 F.2d 106, 108 (9th Cir.1982) (failure to exhaust administrative remedies); *Studio Elec. Technicians Local 728 v. International Photographers of the Motion Picture Indus., Local 659*, 598 F.2d 551, 552 n. 2 (9th Cir. 1979) (failure to exhaust intra-union remedies). *See generally* 6 J. Moore, W. Taggert, J. Wicker, *Moore's Federal Practice* ¶ 56.03 (2d ed. 1987). Rather, failure to exhaust nonjudicial remedies should be raised in a motion to dismiss, or be treated as such if raised in a motion for summary

---

**2.** Subsequent to the district court's order of June 8, 1986, on July 6, twenty-nine Class "B" longshoremen were registered, including the "favored 15" as well as seven of the twenty original plaintiffs in this action. Class "B" applicants filed a grievance the following day. On November 3, the Joint Port LRC denied the grievance as did the Joint Coast LRC. A hearing took place before the Coast Arbitrator on June 26, 1987.

The class B applicants also filed separate individual grievances alleging improper scoring in the 1986 registration. On September 18, 1987, the Joint Port LRC granted class "B" registration to eight of the individual grievants.

**3.** The court's order does not say that the dismissal of the section 301 claims is without prejudice, but specifically states that dismissal of the Title VII claims is *with* prejudice. From this we assume that the court intended, as it should have, to dismiss the section 301 claim without prejudice.

judgment. *Stauffer Chem. Co.*, 670 F.2d at 108; *Studio Elec. Technicians*, 598 F.2d at 552 n. 2.

A literal reading of Federal Rule of Civil Procedure 12(b) suggests that a defense based on failure to exhaust nonjudicial remedies may not be made by pre-answer motion. None of the defenses described in 12(b)(1) through (7) encompass failure to exhaust.[4] However, as illustrated by *Stauffer Chemical Co.*, 670 F.2d at 108, and *Studio Electrical Technicians*, 598 F.2d at 552 n. 2,

> [f]ederal courts . . . traditionally have entertained certain pre-answer motions that are not expressly provided for by the rules. . . . [One] group of pretrial motions is closely related to the management of the lawsuit and might generally be characterized as involving matters of judicial administration; the authority to hear these motions lies in the inherent power of a court to regulate actions pending before it. In this category fall motions to . . . dismiss because another action is pending.

5 C. Wright & A. Miller, *Federal Practice and Procedure* § 1360 at 633–34 (1969). "Nonenumerated" Rule 12(b) motions "are governed by the general motion provisions in the federal rules," including Rule 43(e), *id.* at 642, which permits the hearing of motions based on facts outside the record on affidavits submitted by the parties. Fed.R.Civ.P. 43(e).

The distinction between summary judgment and dismissal for matters in abatement bears on the district court's authority to resolve factual disputes and thus affects the standard of review to be applied by this court:

> [One] reason why a jurisdictional or related type of motion, raising matter in abatement . . ., should be distinguished from a motion for summary judgment relates to the method of trial. In ruling

on a motion for summary judgment the court should not resolve any material factual issue. . . . If there is such an issue it should be resolved at trial. . . . On the other hand, where a factual issue arises in connection with a jurisdictional or related type of motion, the general view is that there is no right of jury trial as to that issue . . . and that the court has a broad discretion as to the method to be used in resolving the factual dispute.

*Moore's Federal Practice, supra,* ¶ 56.03 at 56–61 (footnotes omitted); *cf. Thornhill Publishing Co. v. General Tel. & Elecs. Corp.*, 594 F.2d 730, 733 (9th Cir.1979) ("Faced with a factual attack on subject matter jurisdiction, 'the trial court may proceed as it never could under Rule 12(b)(6) or Fed.R.Civ.P. 56. . . . [N]o presumptive truthfulness attaches to plaintiff's allegations, and the existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of jurisdictional claims' " (quoting *Mortensen v. First Fed. Sav. & Loan Ass'n.*, 549 F.2d 884, 891 (3d Cir.1977) (footnote omitted))).

■ Thus, the question on appeal relating to factual issues is not whether there are any disputed issues of material fact, Fed.R.Civ.P. 56(c), but rather whether, to the extent that the district court made factual determinations, its determinations were clearly erroneous. *Anderson v. City of Bessemer City*, 470 U.S. 564, 572, 105 S.Ct. 1504, 1511, 84 L.Ed.2d 518 (1985) (holding that clearly erroneous standard applies where, as here, the district court adopts findings submitted by the parties); Fed.R.Civ.P. 52(a). The district court's application of the substantive law is reviewed de novo. *United States v. McConney*, 728 F.2d 1195, 1201 (9th Cir.) (en banc), *cert. denied*, 469 U.S. 824, 105 S.Ct. 101, 83 L.Ed.2d 46 (1984).

---

**4.** Rule 12(b), in relevant part, provides:
  Every defense, in law or fact, to a claim for relief in any pleading . . . shall be asserted in the responsive pleading thereto if one is required, except that the following defenses may at the option of the pleader be made by motion: (1) lack of jurisdiction over the sub-

ject matter, (2) lack of jurisdiction over the person, (3) improper venue, (4) insufficiency of process, (5) insufficiency of service of process, (6) failure to state a claim upon which relief can be granted, (7) failure to join a party under Rule 19.

## DISCUSSION

"As a general rule ..., federal labor policy requires that individual employees wishing to assert contract grievances must *attempt* use of the contract grievance procedure agreed upon by employer and union as the mode of redress." *Republic Steel Corp. v. Maddox*, 379 U.S. 650, 652, 85 S.Ct. 614, 616, 13 L.Ed.2d 580 (1965) (footnote omitted; emphasis in original); *Truex v. Garrett Freightlines, Inc.*, 784 F.2d 1347, 1353 (9th Cir.1985). Where, however, "doctrinaire application of the exhaustion rule would defeat the overall purposes of federal labor relations policy," exceptions to the exhaustion requirement have been recognized. *Glover v. St. Louis–S.F. Ry. Co.*, 393 U.S. 324, 329–30, 89 S.Ct. 548, 551–52, 21 L.Ed.2d 519 (1969). One such exception excuses exhaustion if pursuit of contractual remedies would be "wholly futile." *Id.* at 330. In opposition to the motion to dismiss or for summary judgment the Class "B" applicants contended that the futility exception applies in this case because of (1) hostility on the part of the decisionmaking body; (2) unreasonable delay in processing the grievance; and (3) inadequacy of remedy.

■ In *Glover*, the Supreme Court held that employees need not exhaust "any remedy administered by the union, by the company, or both, to pass on claims by the very employees whose rights they have been charged with neglecting and betraying." 393 U.S. at 330–31, 89 S.Ct. at 551–52. The Class "B" applicants, relying on *Glover*, argue that because the members of the Joint Port LRC, who sit on the first rung of the grievance ladder, participated in the registration process, they could not be neutral adjudicators, thus rendering exhaustion futile. This court, in a case involving claims by deregistered longshoremen against the PMA and ILWU, did find (in dictum) futility where the members of the LRC's had participated in the disputed deregistration. *Williams v. Pacific Maritime*

*Ass'n.*, 617 F.2d 1321, 1328–29 n. 13 (9th Cir.1980), *cert. denied*, 449 U.S. 1101, 101 S.Ct. 896, 66 L.Ed.2d 827 (1981). Here, the district court rejected the claim of hostility because the Coastwide Rules provide for a neutral arbitrator as the final step in the grievance procedures. The grievance procedures at issue in *Williams* had no such provision; neutral arbitration was available only if the Joint Coast LCR failed to reach an agreement. *Id.* at 1326 & n. 9. The district court's conclusion that any hostility that may exist at the joint coast level[5] is cured by the availability of neutral arbitration was neither clearly erroneous[6] nor incorrect as a matter of law. *See Rabalais v. Dresser Indus. Inc.*, 566 F.2d 518, 519 (5th Cir.1978) (distinguishing *Glover* where grievance procedure provided for an independent arbitrator).

■ The Class "B" applicants next claim that there had been unreasonable delay because at the time of the district court's decision, more than fifteen months had passed since the 1985 grievance had been filed and no response had been received. In *Williams* this court stated that "[t]he inaction of the Port Committee for almost nine months and its failure to inform appellants of the reasons for the delay make appellants' attempts to invoke the grievance mechanism sufficient to satisfy the exhaustion requirement." 617 F.2d at 1328–29 n. 13 (dictum). Appellees contend that "applicants virtually received an immediate response to their 1985 grievances" in that the Joint Port LRC required the first registration to be redone and then refused to approve the results of the second program. It appears, however, that the Joint Port LRC's actions were taken not in response to the applicants' grievances, but rather in response to affirmative action concerns. *See supra* note 1. Nonetheless, the Class "B" registration was halted throughout 1985; thus, there was nothing for the LRC's to adjudicate. It was not

---

5. The claim of hostility at the lower levels of the grievance procedures is belied by the fact that fourteen of the twenty original plaintiffs in this suit have been registered as Class "B" longshoremen.

6. No evidence that called the neutrality of the Coast Arbitrator into doubt was presented to the district court.

until April of 1986 that appellees announced their intent to register Class "B" longshoremen, and the applicants, through their counsel, filed new grievances. The district court's order granting the motion to dismiss was filed less than two months later, on June 9, 1986. Under these circumstances, the district court's rejection of applicants' unreasonable delay allegation was not clearly erroneous.

 Finally, applicants argue that their failure to exhaust should be excused because the grievance procedures do not afford them an adequate remedy. *See Williams,* 617 F.2d at 1328–29 n. 13. The district court found that

> [a]pplicants for registration have, in the past, successfully utilized the [Longshore Contract] grievance procedure.... In cases where grievances were found to have merit, ... appropriate remedies have been awarded, including granting of interviews, reinterviews, and registration of the grievant, even where such registration has resulted in a total number of new registrants which exceeds the original port referral approved by the Joint Coast LRC.

The court thus concluded that "the uncontradicted record evidence shows that the remedies available ... are fair and adequate." The Class "B" applicants offer nothing in support of a contrary conclusion beyond assertions that it is "unlikely" or "doubtful" that adequate relief will be forthcoming. They have not demonstrated that the district court's factual findings were clearly erroneous or that its conclusions of adequacy were incorrect.[7]

In sum, we find no error in the district court's conclusion that resort to the contractual grievance procedures would not be an exercise in futility. Accordingly, the Class B applicants were properly required to exhaust their contractual remedies before proceeding with this lawsuit.

7. Subsequent to the district court's order, the Joint Port LRC, in response to grievances, registered eight plaintiffs in this case as Class "B" longshoremen. This action at least does not cut against the district court's conclusion that the grievance procedures afford an adequate remedy.

## CONCLUSION

The district court correctly treated appellants' motion with regard to the section 301 actions as one to dismiss rather than for summary judgment. Because the court correctly applied the substantive law and made no clearly erroneous findings of fact, its order dismissing this action is AFFIRMED.