[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED

U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
11/18/99
THOMAS K. KAHN
CLERK

No. 98-9153

D.C. Docket No. 96-00148-4-CV-HLM

TRACY ANTHONY MILLER,

Plaintiff-Appellant,

versus

TANNER, LT., CHARLIE POOLE, et al.,

Defendants-Appellees.

Appeal from the United States District Court
for the Northern District of Georgia

**(November 18, 1999)**

Before ANDERSON, Chief Judge, TJOFLAT, Circuit Judge, and FAY, Senior Circuit
Judge

TJOFLAT, Circuit Judge:

Tracy Miller, a Georgia prison inmate, appeals the district court's dismissal of his 42 U.S.C. § 1983 claim because he failed to exhaust his administrative remedies as required by the Prison Litigation Reform Act, see 42 U.S.C. § 1997e(a) (Supp. II 1996). We find that Miller did exhaust the administrative remedies set forth in the Georgia Department of Corrections' (the "GDC") procedures.[1] Accordingly, we reverse the district court's grant of summary judgment.

I.

In his complaint, filed with the district court on May 22, 1996, Miller alleged that upon arriving at Hays State Prison ("Hays") on April 18, 1996, appellee Tanner and eleven prison guards, including appellees Poole, Blalock, and Martin, dragged him from the transport van and beat him for being a

---

[1] Miller also disputes that: (a) section 1997e(a) applies to his section 1983 lawsuit because the underlying events occurred before section 1997e(a)'s effective date; (b) his excessive force claim is a claim "with respect to prison conditions" and thus covered by section 1997e(a); and (c) the district court's conclusion that a district court lacks discretion to waive section 1997e(a)'s exhaustion requirement makes the provision unconstitutional as applied to Georgia inmates. Our finding that Miller complied with the GDC's grievance procedures and thus exhausted his administrative remedies makes it unnecessary for us to decide these other issues.

"troublemaker" who filed numerous grievances at his former prison.[2] Miller

further alleged that after being beaten, he was taken to the prison infirmary where

appellee Dr. Derrick refused to treat him, forcibly x-rayed him, and ordered him

shackled to a metal bed. Lastly, Miller alleged that appellees were indifferent to

his medical needs as a paraplegic with a neurogenic bladder. Instead of treating

him, appellees housed him in an unaccommodated unit, left him on the concrete

floor of his cell, allowed him to become covered in feces and urine, denied him the

use of a wheelchair or leg braces, and denied him physical therapy.[3]

On November 12, 1996, Miller amended his complaint, presenting the

following additional allegations: that on April 22, 1996 he obtained an inmate

grievance form from his counselor at Hays, and that he filed that grievance on

April 25. Miller failed to sign or date the grievance form. On May 2, 1996, Kyla

Wilbanks, the Hays grievance clerk, sent Miller a memorandum stating that his

_____

[2] The question presented in this appeal is whether appellant exhausted his administrative remedies. The facts relating to that question are undisputed. Although the facts underlying the grievance are in dispute, they are irrelevant as to the exhaustion question. We offer appellant's version merely as background.

[3] In his complaint, Miller also alleged instances of excessive force that occurred on May 9, 1996. Miller admits that he did not exhaust his administrative remedies as to these instances because he did not file a grievance after they occurred. On appeal, therefore, we address only the allegations in Miller's complaint that relate to the April 18, 1996 incidents.

grievance was denied because "[he] did not sign or date [his] grievance form." This memorandum also stated that "[w]hen any grievance is terminated at the institutional level you do not have the right to appeal. The above listed grievance(s) is closed."[4] After his grievance was denied, Miller filed a section 1983 civil rights action, alleging that appellees violated his Eighth Amendment right to be free of cruel and unusual punishment by using excessive force against him and being deliberately indifferent to his medical needs.

Appellees moved the district court to dismiss Miller's complaint, as amended, for failure to allege a constitutional violation. The district court denied their motion. After filing an answer, appellees filed a motion, styled "Defendants' Motion to Dismiss and Motion for Summary Judgment," in which they argued that appellant failed to exhaust his administrative remedies before bringing suit. Appellees contended that Miller failed to exhaust his administrative remedies, as required by 42 U.S.C. § 1997e(a), because he did not sign and date the grievance form.

---

[4] Miller attached this memorandum to his amended complaint; the memorandum therefore became part of his allegations.

On August 28, 1998, the district court granted appellees' motion and dismissed Miller's case without prejudice.[5] The court found that Miller failed to exhaust his administrative remedies because he did not follow the GDC's grievance procedures, which required that he sign and date his grievance form. This appeal followed.

## II.

We review de novo dismissals for failure to exhaust administrative remedies under section 1997e(a). See Alexander v. Hawk, 159 F.3d 1321, 1323 (11th Cir. 1998).

Prison inmates have a constitutional right of access to the courts. See Lewis v. Casey, 518 U.S. 343, 351, 116 S. Ct. 2174, 2180, 135 L. Ed. 2d 606 (1996) (stating that prisoners must be afforded "a reasonably adequate opportunity to present claimed violations of fundamental constitutional rights to the courts") (internal quotation marks omitted). Section 1997e(a) sets forth the procedures

---

[5] The district court's order "grant[ed] Defendants' Motion for Summary Judgment and Motion to Dismiss." Because the district court relied on at least one of appellees' affidavits in support of their motion in making its decision, we assume that the district court granted a motion for summary judgment and in the same breath, dismissed Miller's complaint, as amended, without prejudice. Our review is of the district court's grant of summary judgment.

prisoners must follow in exercising their fundamental right of access to the courts.

Under this provision, prisoners must exhaust any administrative remedies available

to them before filing a suit in federal court based on violations of constitutional

rights. Specifically, section 1997e(a) provides that:

> [n]o action shall be brought with respect to prison conditions under
> Section 1983 of this title, or any other Federal law, by a prisoner confined
> in any jail, prison or other correctional facility until such administrative
> remedies
> as are available are exhausted.

42 U.S.C. § 1997e(a). An inmate incarcerated in a state prison, thus, must first

comply with the grievance procedures established by the state department of

corrections before filing a federal lawsuit under section 1983.

In deciding if Miller exhausted his administrative remedies, we do not

review the effectiveness of those remedies, but rather whether remedies were

available and exhausted. See Alexander, 159 F.3d at 1326. There is no dispute

that the GDC made administrative remedies available to prisoners. Before

deciding whether Miller followed the proper procedures to exhaust those remedies,

we must first determine what the procedures were that he had to follow.

The GDC has a detailed set of Standard Operating Procedures (the "SOPs")

relating to inmate grievances. These procedures provide inmates and their

counselors a step-by-step guide to filing a grievance. For instance, the

"Jurisdiction" section of the SOPs explains what kinds of harms can form the basis of a grievance, what kinds of harms cannot be grieved, and what kinds of harms must be grieved through more specialized processes such as the Administrative Segregation appeal process. See Georgia Dep't of Corrections, SOPs, at 3-4 (1996). The "Procedures for Filing a Grievance" section of the SOPs is similarly specific.

The procedures section first sets forth the hierarchy for running the grievance system at each Georgia prison. At the top is the warden/supervisor, followed by the Grievance Coordinator, and then the counselors. See SOPs at 5. The counselors assist inmates in filing their grievances by distributing grievance forms, assisting prisoners in preparing such forms (particularly prisoners for whom English is a second language), and receiving completed forms. See id. at 5-6. When a counselor receives a grievance form, he or she is required to "complete the receipt portion of the form indicating the inmate's name, I.D. Number, and the date the inmate submitted the grievance." Id. at 6 (emphasis in original). Next, the counselor signs the receipt portion of the grievance form and returns one copy to the inmate. See id. A counselor is also required, by the next business day, to submit to the Grievance Coordinator the information necessary to enter the grievance into the Inmate Grievance Management System database. Id. This

7

information includes the inmate's name and the date on which the inmate filed his or her grievance.  Thus, once the Grievance Coordinator enters the grievance into the database, which presumably occurs within a few days, anyone in the GDC is able to find out that a grievance was filed, by whom, and on what date.

The SOPs do not require that an inmate sign or date a grievance form when submitting it to his or her counselor.  The only time the SOPs require a signature from an inmate is when the inmate receives a response from the warden/supervisor.  At that time, the inmate is required to sign the grievance form confirming that a response was received.  See id. at 12.  Further, the SOPs do not require that inmates file their grievances under penalty of perjury.[6]

Appellees argue that the GDC's grievance procedures required that Miller sign and date his grievance form.  According to appellees, this is "a common sense procedural requirement" because otherwise the GDC would have no way of knowing who filed the grievance or when it was filed.  If the GDC thought signing and dating the form was a common sense requirement, it should have included the

---

[6] If the grievance procedures required that inmates make their allegations under penalty of perjury, then signing the form would be necessary.  Such a rule would operate much like the signature and oath requirements on an affidavit, in that the signature – which certifies that the signer believes the allegations asserted are true – provides the basis for bringing perjury charges against the signer. Cf. Cord v. Smith, 370 F.2d 418, 420 & n.1 (9th Cir. 1966); Lamberti v. United States, 22 F. Supp. 2d 60, 71 n.53 (S.D.N.Y. 1998).

requirement in its grievance SOPs. The SOPs require many other specific steps, such as that the form be completed in blue or black ink, that the counselor sign the form, that the counselor fill out the inmates name and the date on which the grievance was filed, and that the inmate sign upon receipt of the warden's/superintendent's response.  SOPs at 5-6.  Certainly, if the GDC thought to provide for all of these steps, it would have included the "common sense" requirement of a signature and date if it had thought such a requirement useful to the grievance procedure.  But it did not.  The GDC's grievance procedures simply do not require that an inmate sign and date a grievance form when it is submitted.

Further, it is not true, as appellees asserted at oral argument, that without a signature and date the GDC would have no way of knowing who filed the grievance or when.  Under the SOPs, a counselor must note, on the receipt portion of the grievance form at the time of submission, both the inmate's name and the date on which the grievance was filed.  Those pieces of information are forwarded to the Grievance Coordinator for inclusion in the state-wide grievance database. Thus, not only does the warden/superintendent, who receives the actual grievance form, know the inmate's name and the date on which the grievance was filed, but anyone with access to the database may also discover that information.

Even if Miller was not required to sign and date his grievance form to exhaust his administrative remedies, appellees argue, he was required to appeal the institutional-level denial of his grievance to satisfy section 1997e(a)'s exhaustion requirement. Again, we disagree. The memorandum Miller received on May 2, 1996 denying his grievance at the institutional level stated "[w]hen any grievance is terminated at the institutional level you do not have the right to appeal. The above listed grievance(s) is closed." This statement unambiguously told Miller that an appeal was futile, even prohibited. In other words, appealing might be treated as insubordination and that there might be harmful consequences for disobeying the rules.

Appellees point us to a statement in the original grievance, which stated, "[i]f you appeal, return this form and the appeal form to your counselor or grievance coordinator, within four (4) calendar days of receipt of the warden's/superintendent's response." This is of no importance because it only told Miller what to do if he could appeal. Miller was told he could not appeal by the person charged with ensuring that the grievance procedures were complied with properly. What the grievance form told Miller to do if he could appeal, therefore, is irrelevant to determining whether he properly exhausted his administrative remedies since he had been informed that an appeal was prohibited. We find that

10

Miller was not required, in order to exhaust his administrative remedies, to file an appeal after being told unequivocally that appeal of an institution-level denial was precluded. He exhausted his administrative remedies by filing the April 25, 1996 grievance form.

## III.

For the foregoing reasons, we find that Miller exhausted his administrative remedies as required by 42 U.S.C. § 1997e(a). Therefore, we REVERSE the district court's dismissal of Miller's complaint, as amended, and REMAND this case to the district court for further proceedings consistent with this decision.

SO ORDERED.