Steven Derrick IRVIN, Plaintiff,

v.

D. ZAMORA, et al., Defendants.

No. 99CV2350(NLS).

United States District Court,
S.D. California.

Aug. 31, 2001.

Steven Derrick Irvin, pro se.

Randall A. Pinal, Deputy Atty. Gen., Office of the Attorney General of the State of California, San Diego, CA, for Defendants.

ORDER CONSTRUING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AS A MOTION TO DISMISS AND ORDER DENYING MOTION TO DISMISS [Doc. No. 50]

STORMES, United States Magistrate Judge.

Plaintiff Steven Derrick Irvin, a state prisoner proceeding *pro se* and *in forma pauperis*, filed a Complaint pursuant to Title 42, United States Code, section 1983, against officials at Calipatria State Prison ("Calipatria"). Before the Court is defendants' Motion for Summary Judgment, as well as plaintiff's Opposition thereto, and

defendants' Reply. In their Motion, defendants seek an order granting summary judgment in favor of defendants Pyle, Alsip, and Fox on the ground that plaintiff failed to exhaust administrative remedies as to his claims against these defendants. For the reasons outlined below, defendants' Motion for Summary Judgment will be construed as a nonenumerated Motion to Dismiss pursuant to Federal Rule of Civil Procedure 12 and will be DENIED.[1]

### *Procedural History*

On February 25, 2000, defendants filed a Motion to Dismiss seeking dismissal on a number of grounds, one of which was that all causes of action in plaintiff's original Complaint should be dismissed for failure to exhaust administrative remedies. At that time, controlling law in the Ninth Circuit indicated that "[e]xhaustion of administrative remedies under section 1997e(a) is not required if a prisoner's section 1983 claim seeks only money damages and if the correctional facility's administrative grievance procedure does not allow for such an award." *Rumbles v. Hill,* 182 F.3d 1064, 1069 (9th Cir.1999), *cert. denied,* 528 U.S. 1074, 120 S.Ct. 787, 145 L.Ed.2d 664 (2000). Based on *Rumbles,* the Court found that it was not necessary for plaintiff to exhaust his administrative remedies because he was only seeking monetary damages by way of his Complaint. As a result, this Court denied defendants' Motion to Dismiss to the extent it sought dismissal of the action for failure to exhaust administrative remedies. [Order Granting in Part and Denying in Part Defendant's Motion to Dismiss Plaintiff's Complaint, filed Oct. 4, 2000, at 6–7.]

■ By way of their Motion for Summary Judgment, defendants are asking the Court to revisit the exhaustion issue, but only as to defendants Pyle, Alsip, and Fox, based on retroactive application of the Supreme Court's recent decision in *Booth v. Churner,* 531 U.S. 956, 121 S.Ct. 1819, 1825, 149 L.Ed.2d 958 (2001). In *Booth,* the Supreme Court held that the exhaustion requirement is mandatory and must be satisfied regardless of the relief offered through the administrative process. *Booth,* 121 S.Ct. at 1825. The Supreme Court's decision in *Booth* overrules *Rumbles* and is applicable to this case. *Harper v. Virginia Department of Taxation,* 509 U.S. 86, 96, 113 S.Ct. 2510, 125 L.Ed.2d 74 (1993) (holding that a rule of federal law that is applied by the Supreme Court "is the controlling interpretation of federal law and must be given full retroactive effect in all cases still open on direct review and as to all events, regardless of whether such events predate or postdate [the Supreme Court's] announcement of the rule").

For reasons that are not relevant to the instant Motion, defendants' prior Motion to Dismiss was also granted on a number of grounds, but plaintiff was granted leave to amend his Complaint. [Order Granting in Part and Denying in Part Defendant's Motion to Dismiss Plaintiff's Complaint, filed Oct. 4, 2000, at 19.] Thereafter, plaintiff submitted a Motion indicating he did not intend to file an amended complaint and requested that he be permitted to proceed with the claims remaining in his original Complaint following the Court's Order Granting in Part and Denying in Part Defendant's Motion to Dismiss Plaintiff's Complaint filed October 4, 2000. By Order filed November 16, 2000, this Court ordered defendants to answer or otherwise respond to the remaining claims in plain-

---

1. The parties in this case have voluntarily consented to this Court's jurisdiction for all purposes. [Doc. Nos. 3 and 16.]

tiff's Complaint. Defendants then filed an Answer on November 27, 2000.

### Background

Originally, plaintiff's Complaint contained four causes of action alleging: (1) deliberate indifference to serious medical needs against defendants Blackman, Klipa, and Zamora; (2) deliberate indifference to health and safety against defendants Pyle and Alsip; (3) deliberate indifference/failure to supervise and train against defendants Zamora and Fox; and (4) conspiracy to deny access to the courts against defendants Kitterman, Zamora, Fox, Pyle, and Alsip. As a result of the Court's Order Granting in Part and Denying in Part Defendant's Motion to Dismiss Plaintiff's Complaint filed October 4, 2000, the following allegations remain to be determined: (1) in the first cause of action, deliberate indifference to plaintiff's serious medical needs against defendants Blackman and Klipa (defendant Zamora was dismissed from this cause of action); (2) in the second cause of action, deliberate indifference to plaintiff's health and safety against defendants Pyle and Alsip; and (3) in the third cause of action, failure to supervise and train against defendant Fox (defendant Zamora was dismissed from this cause of action). The fourth cause of action for conspiracy to deny plaintiff access to the courts was dismissed entirely as to all defendants named therein.

Plaintiff's Complaint alleges that on November 6, 1998 defendants Pyle and Alsip failed to take reasonable safety precautions while spraying pesticides "in an inhabited prison housing unit," thereby exposing him and others to "harmful" and "toxic" substances. [Compl., at 13.] According to the Complaint, defendants Pyle and Alsip, acting under the direction of defendant Fox, sprayed a pesticide known as Killmaster II and allowed the pesticide to enter the facility's "air conditioning intake." [Compl., at 8.] Plaintiff further alleges that defendant Fox knew that his "staff was ill trained in the handling of toxic pesticides." [Compl., at 14–15.]

According to plaintiff, he was standing in his cell on November 6, 1998 when he was showered with a liquid substance coming out of the air vent. Plaintiff further alleges that the pesticide got into his eyes and mouth, causing him to vomit and to have difficulty breathing. Plaintiff called for help. Other inmates were calling for help at the same time. About twenty minutes later, defendant Lopez arrived and ordered defendant Olive to open plaintiff's cell. Plaintiff was then given a pass to go to the medical clinic. When plaintiff arrived at the window for the medical clinic, he alleges that defendant Blackman, a nurse, and defendant Klipa, a medical technical assistant, were sitting at their desks approximately twenty feet away. Plaintiff advised defendants Blackman and Klipa that he had vomited, was having a problem breathing and seeing, and that his skin was burning and irritated. Without moving from their desks, defendants Blackman and Klipa allegedly told plaintiff he looked fine, that it was not their responsibility to see plaintiff, and that they would issue a rules violation report if plaintiff did not move away from the window. According to plaintiff, other prisoners were being brought to the clinic for treatment, and defendants Blackman and Klipa also turned them away without any medical treatment.

Thereafter, on November 7, 9, and 13, plaintiff claims he filed three sick call forms requesting to be examined by a physician for his illnesses, which he believes were caused by pesticide exposure. Plaintiff believes defendant Blackman, who told plaintiff his sick call forms had been misplaced, deliberately failed to put plaintiff's name on the list of inmates who were to be examined by a physician. Plaintiff

then filed a number of complaints about his lack of medical treatment. According to plaintiff, he was not examined by a physician until several months later on March 5, 1999. At that time, the physician found that plaintiff's respiratory system was normal. A neurological examination also performed at that time was normal. Appropriate x-ray and laboratory tests were ordered.

Through the inmate appeal process, plaintiff was able to obtain a copy of the Material Safety Data Sheet ("MSDA") for the pesticide, Killmaster II, a copy of which is attached to plaintiff's Complaint. Plaintiff alleges that as a result of pesticide exposure he continues to suffer from respiratory problems, severe migraine headaches, and a skin rash.

### Discussion

#### I.  Dismissal vs. Summary Judgment.

Plaintiff argues that defendants' Motion for Summary Judgment should be denied because the issue of exhaustion is properly raised in a motion to dismiss and not in a summary judgment motion. Defendants contend that pursuant to Ninth Circuit precedent their Motion and the exhaustion issue is properly before the Court.

■ The general rule in the Ninth Circuit is that "failure to exhaust nonjudicial remedies is a matter in abatement, not going to the merits of the claim, and as such is not properly raised in a motion for summary judgment." *Ritza v. Internat'l Longshoremen's & Warehousemen's Union*, 837 F.2d 365, 368 (9th Cir.1988). *See also Stauffer Chem. Co. v. FDA*, 670 F.2d 106, 108 (9th Cir.1982); *Studio Elec. Tech. Local 728 v. Internat'l Photographers*, 598 F.2d 551, 552 n. 2 (9th Cir. 1979). The Ninth Circuit in *Ritza* also indicated that when a defendant files a summary judgment motion that raises the issue of exhaustion of nonjudicial remedies, the motion should be treated

as a "nonenumerated" motion to dismiss under Federal Rule of Civil Procedure 12(b). *Ritza*, 837 F.2d at 368–369. Accordingly, this Court will construe defendants' summary judgment motion as a nonenumerated motion under Federal Rule 12(b) rather than a summary judgment motion under Federal Rule of Civil Procedure 56.

#### II.  Motion to Dismiss Standards.

■ Motions to dismiss for failure to state a claim that are filed pursuant to Federal Rule of Civil Procedure 12(b)(6) test the legal sufficiency of the claims in the complaint. As a result, courts cannot consider matters outside the complaint unless the motion is converted to a summary judgment motion. Fed.R.Civ.P. 12(b) (West 2001). However, the standard changes somewhat for "nonenumerated" Rule 12(b) motions to dismiss that raise the issue of administrative exhaustion. Courts considering "nonenumerated" Rule 12(b) motions on the issue of administrative exhaustion may not only rely on matters outside the pleadings but also have broad discretion to resolve any factual disputes. *Ritza*, 837 F.2d at 369. Although in this case plaintiff has attached documents to his Complaint in support of his contention that he has exhausted his administrative remedies, defendants have asked the Court to consider additional information. In this regard, defendants have submitted the Declaration of Linda Melching, along with supporting exhibits.

#### III.  Exhaustion Pursuant to Section 1997e(a).

As amended by the Prison Litigation Reform Act ("PLRA"), Title 42, United States Code, section 1997e(a), provides that "[n]o action shall be brought with respect to prison conditions under § 1983 of this title, or any other Federal law, by a

prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a) (West 2001). Thus, section 1997e(a) requires a plaintiff to allege or otherwise show exhaustion of "available" administrative prison grievance procedures through the highest existing level.

The administrative appeal system for inmates in the California prison system is described in Title 15 of the California Code of Regulations. "Any inmate or parolee under the [California Department of Correction's] jurisdiction may appeal any departmental decision, action, condition or policy perceived by those individuals as adversely affecting their welfare." CAL. CODE REGS. tit. 15, § 3084.1(a). In order to exhaust administrative remedies, a prisoner must first attempt to informally resolve the problem with the "staff [member] involved in the action or decision being appealed." *Id.* § 3084.5(a). If unsuccessful, the prisoner must then submit a formal appeal on an inmate appeal form (i.e., a CDC 602 form) to the institution's Appeals Coordinator or Appeals Office, *id.* § 3084.5(b), and if unsuccessful there, must submit a formal appeal for second level review, *id.* § 3084.5(c), which is conducted by the institution head or designee. *Id.* § 3084.5(e)(1). Finally, the prisoner must submit a formal appeal for third level review to the director of the California Department of Corrections or the director's designee. *Id.* § 3084.5(e)(2). The Director's Level Decision "shall be final and exhausts all administrative remedies available in the Department [of Corrections]." *See* Cal. Dept. of Corrections Operations Manual, § 54100.11, "Levels of Review."

In this case, it is undisputed that plaintiff filed two administrative grievances regarding the incidents that are the subject of his Complaint and that he appealed

these grievances through and including the director's level. However, defendants argue that plaintiff did not exhaust his administrative remedies as to defendants Pyle, Alsip, and Fox because: (1) plaintiff did not follow established procedures as to his potential claims against these defendants; and (2) the grievances that plaintiff did pursue did not name or allege that these defendants were deliberately indifferent to his health and safety in connection with the spraying of pesticides. Defendants contend that once plaintiff was advised during the grievance process that defendants Pyle, Alsip, and Fox were associated with the spraying of pesticides on the day in question he should have sought an informal resolution with these individuals and then pursued claims against them through the director's level which specifically addressed their conduct in connection with the pesticide incident.

As defendants point out, few courts have addressed the specificity required for claims raised in the prison administrative grievance process to satisfy the exhaustion of remedies under 42 U.S.C. § 1997e(a). Some courts have taken a "substantial compliance" approach in cases where the prisoner did not meet a procedural requirement that is unrelated to the substance of the claims but took all steps that were appropriate and necessary under the circumstances to alert officials to a particular grievance. For example, in *Miller v. Tanner*, 196 F.3d 1190 (11th Cir.1999), the prisoner did not sign or date the grievance form that he submitted, and the form was returned to him with a notation indicating that his grievance was denied because he did not sign it. The return notation also stated as follows: "[w]hen any grievance is terminated at the institutional level you do not have the right to appeal. The above listed grievance(s) is closed." *Id.* at 1192. Defendants argued that the prisoner failed to exhaust administrative remedies be-

cause he did not sign and date the form as required by the applicable grievance procedure. After reviewing the procedures, the Eleventh Circuit found that the procedures did not specifically state that prisoners must sign and date grievances when submitted. The procedures only required inmates to sign and date grievance forms when receiving a response. *Id.* at 1193. The Eleventh Circuit also found that it was not necessary for the prisoner to appeal the denial of his grievance as required by the applicable procedures in order to satisfy the exhaustion requirement because he had been told by the institution that he did not have a right to an appeal. *Id.* at 1194. *See also Nyhuis v. Reno*, 204 F.3d 65, 77–78 (3d Cir.2000) (referencing *Miller, supra,* and stating in *dicta* that "compliance with the administrative remedy scheme will be satisfactory if it is substantial"); *Ahmed v. Sromovski*, 103 F.Supp.2d 838, 843–846 (E.D.Pa.2000) (applying the "substantial compliance" standard and finding that plaintiff did not meet the standard because he was familiar with the applicable grievance procedures but without explanation did not complete all three steps in the procedural process in a timely manner and only attempted to exhaust his administrative remedies to prevent a dismissal after defendants filed a motion to dismiss his federal complaint for failure to exhaust); *Pearson v. Vaughn*, 102 F.Supp.2d 282 (E.D.Pa.2000) (finding that plaintiff had "substantially complied" with the exhaustion requirement even though he did not complete all three steps of the grievance procedures because a prison official had advised plaintiff that his problem was "not addressable under the grievance process," and there was nothing to indicate what other steps plaintiff could have taken to resolve his problem administratively).

Thus far, courts have taken two different approaches when determining whether administrative grievances pursued by a prisoner are factually sufficient to fulfill the exhaustion requirement. First, the Sixth Circuit in *Curry v. Scott*, 249 F.3d 493 (6th Cir.2001), recently applied a bright line rule that a prisoner must identify every person that he ultimately intends to sue during the administrative process in order to satisfy the exhaustion requirement. In *Curry*, several prisoners complained at all levels of the prison's grievance system about the use of excessive force against them by a particular correctional officer. However, when these plaintiffs filed their civil action in federal court, they raised for the first time a claim against a second officer believed to have witnessed the use of excessive force but who had allegedly failed to intervene. *Id.* at 504. The district court dismissed the claims against the second officer for failure to exhaust because the plaintiffs did not even mention anything about the second officer's behavior in their grievances. *Id.* Plaintiffs argued on appeal that "requiring prisoners to put forth all legal theories in their grievances imposes an unduly heightened pleading standard on § 1983 plaintiffs." *Id.* It was plaintiffs' contention that "they were not required to identify every person against whom they had a grievance in their written complaint to prison authorities." *Id.* at 505. It was plaintiffs' position that their grievances against the officer who committed the excessive force was sufficient to satisfy the exhaustion requirement as to the second officer because it would have been natural for prison officials to investigate the second officer's role during the course of an investigation of the incident. *Id.*

The Sixth Circuit disagreed, finding that the allegation against the second officer was "a separate claim, against a separate individual, premised on a separate and independent legal theory." *Id.* Because prison officials did not know that the prisoners had a grievance against the second

officer, they had no reason to pursue any disciplinary or other action against him based on the prisoners' grievances. In its opinion affirming the district court's dismissal of the claims against the second officer, the Sixth Circuit explained that:

> The requirement that a prisoner file a grievance against the person he ultimately seeks to sue does not impose a heightened pleading requirement upon would-be § 1983 plaintiffs. It only assures, as envisioned under the PLRA, that the prison administrative system has a chance to deal with claims against prison personnel before those complaints reach federal court.

*Curry*, 249 F.3d at 505. *See also Gibbs v. Bolden*, 151 F.Supp.2d 854, 856–857 (E.D.Mich.2001) (dismissing a defendant pursuant to the holding in *Curry* because plaintiff had not filed a grievance against the person he ultimately intended to sue "in order to alert prison officials to possible problems with that person").

Prior to its decision in *Curry, supra,* and for reasons of fairness, the Sixth Circuit did apply a more liberal "substantial compliance" standard to the issue of exhaustion under factual circumstances that were similar to those in *Curry,* but the plaintiff's claim occurred prior to the effective date of the PLRA. In *Wolff v. Moore,* 199 F.3d 324 (6th Cir.1999), the prisoner plaintiff alleged in his section 1983 complaint that one prison official assaulted and used excessive force against him and that a second official conspired with and assisted the first official. *Id.* at 326. At trial, a jury returned a verdict against both officials. *Id.* On appeal, the second official argued that the claim against him should have been dismissed for failure to exhaust because the plaintiff did not directly implicate him in the assault during the administrative grievance process. *Id.* at 328. The Sixth Circuit indicated that for reasons of fairness "substantial compliance" with the applicable administrative process

is sufficient when the claim in question arises before the effective date of the PLRA but the complaint is filed afterwards. *Id.* at 327. Because officials had information implicating the second officer during the administrative process and the claim against him was "closely intertwined with the excessive force claim" against the other officer, the Sixth Circuit held that the plaintiff had "substantially complied" with the exhaustion requirement as to the second officer even though he did not pursue a separate and independent administrative grievance against this second officer. *Id.* at 329.

Because the factual circumstances in the two cases are so similar, the Sixth Circuit's decisions in *Curry* and *Wolff* can only be reconciled if they are read to mean that the "substantial compliance" standard only applies to determinations on the factual sufficiency of administrative grievances for claims that arose prior to April 26, 1996, the effective date of the amendments to the PLRA. Although it does not reference either *Curry* or *Wolff,* the Seventh Circuit in *Smith v. Zachary,* 255 F.3d 446 (7th Cir.2001), has indicated that the "substantial compliance" standard only applies "when a prisoner's claim arose before April 26, 1996, the effective date of the PLRA amendment." *Id.* at 452.

The second approach taken by the Eleventh Circuit in *Brown v. Sikes,* 212 F.3d 1205 (11th Cir.2000), is that in order to satisfy the exhaustion requirement a prisoner must "provide in his administrative grievance as much relevant information about his claims, including the identity of those directly involved in the alleged deprivations, as the prisoner reasonably can provide. It does not require him to provide information he cannot reasonably obtain. . . ." *Id.* at 1210. According to the Eleventh Circuit, it would not further the purposes behind the exhaustion require-

ment if prisoners were required to include information in their grievances that they did not know or could not readily ascertain at the time the grievance was submitted. According to the Eleventh Circuit, the purposes behind the exhaustion requirement are as follows:

> (1) to avoid premature interruption of the administrative process; (2) to let the agency develop the necessary factual background upon which decisions should be based; (3) to permit the agency to exercise its discretion or apply its expertise; (4) to improve the efficiency of the administrative process; (5) to conserve scarce judicial resources, since the complaining party may be successful in vindicating rights in the administrative process and the courts may never have to intervene; (6) to give the agency a chance to discover and correct its own errors; and (7) to avoid the possibility that 'frequent and deliberate flouting of the administrative processes could weaken the effectiveness of an agency by encouraging people to ignore its procedures.'

*Brown,* 212 F.3d at 1208, quoting *Alexander v. Hawk,* 159 F.3d 1321, 1327 (11th Cir.1998).

The crux of the inmate's claim in *Brown* was that he had been denied medical treatment in violation of the Eighth Amendment because he had never received items prescribed to him by a prison physician for the treatment of a hernia. *Id.* at 1207. Although the inmate exhausted the crux of his claim in the prison grievance system, he never identified the individuals who would have been responsible for making sure he received the items prescribed by the physician. *Id.* at 1207–1208. When he filed his federal action, the inmate alleged that his Eight Amendment rights had been violated because he had been denied necessary medical treatment. The only named defendants in the action were the prison's warden and commissioner. These defen-

dants then filed a motion to dismiss arguing that the inmate had not exhausted his administrative remedies against them because he had not named them in his prison grievances. The inmate explained that he still did not know the identities of the responsible parties. He also indicated that he only named the warden and commissioner as defendants in the lawsuit because he did not know who the responsible officials were, but the warden and the commissioner were in a position to identify these individuals. *Id.* at 1208–1209. The district court dismissed the entire complaint, finding that the inmate had not exhausted his administrative remedies against the warden and the commissioner because he did not name either in the grievance process. *Id.* at 1206.

On appeal, the Eleventh Circuit acknowledged that it was unlikely that the warden or the commissioner would have been directly involved in delivering medical supplies to inmates or would have had personal knowledge of the facts in this particular inmate's case. As a result, the Eleventh Circuit noted that the claims against the warden and the commissioner would be subject to dismissal based on their lack of personal knowledge or involvement in the alleged deprivation. However, the Eleventh Circuit held that it was erroneous for the district court to dismiss the entire complaint for failure to exhaust administrative remedies just because the inmate did not name the warden or the commissioner during the grievance process. The Eleventh Circuit reasoned that there was nothing in the record to indicate that the inmate could have obtained the names of the responsible parties prior to filing suit and that it would not serve any of the purposes of section 1997e(a) to require the inmate to include information in his prison grievances that he did not know or could not reasonably obtain at that time. *Id.* at 1209–1210.

In this case, petitioner pursued two separate grievances to the Director's Level that revolve around the pesticide incident. First, petitioner prepared and/or submitted his first CDC 602 Appeal Form on or about November 15, 1998. [Defs.' Ex. 2, CDC 602 Appeal form, at 1–3.] In this grievance, plaintiff complained that someone on the prison staff sprayed pesticide near the air conditioning intake of the building where he was housed. Plaintiff requested an investigation, the names of the staff members who sprayed the pesticide, and the name of the chemicals. He also demanded $500 per day for every day that he did not have the name of the staff members who sprayed the pesticide. Although it is not entirely clear from the form, plaintiff's grievance was partially granted at the informal or formal level. Plaintiff was advised that defendants Pyle and Alsip were the pest control technicians associated with the spraying of pesticides at the facility and that the pesticide used was Killmaster II. However, plaintiff indicated he was dissatisfied because he was not paid $500 per day for the delay in providing him with the information he requested. Plaintiff also indicated that he was dissatisfied because he could not interview the individuals who sprayed the pesticide. Plaintiff's appeal was denied at the second level appeal for three reasons: (1) plaintiff's demands for information were partially granted below, (2) there is no regulation which requires the prison to compensate inmates for delays in receiving information; and (3) plaintiff's request for an interview with the control technicians was not part of his original grievance. Plaintiff stated that he was dissatisfied with this result because he and other inmates became ill as a result of pesticide exposure, he was denied medical treatment for pesticide exposure, and he was entitled to $500 per day for every day he was not provided with the information he requested.

Plaintiff's appeal at the director's level requested an investigation, the names of the staff who sprayed the pesticide, the name of the pesticide, and $500 per day for the delay in providing him with the information he requested. Plaintiff's director's level appeal was denied because the information plaintiff was seeking had already been provided to him and because he failed to provide sufficient facts or evidence to justify any further relief. In addition, the director's level denial states that defendant Fox, who is a Senior Hazardous Materials Specialist, was contacted during the director's level review process about the pesticide incident. Defendant Fox indicated that the pesticide was disbursed at ground level and that the intake for the air conditioning system is located on the roof of the facility where plaintiff was housed. As a result, defendant Fox concluded that any exposure to the pesticide through the air conditioning system would have been minimal because the chemical would have disbursed through the air as it rose.

Plaintiff's second grievance was submitted on or about November 16, 1998 (i.e., the day after his first CDC 602 Appeal Form was prepared and/or submitted). [Ex. A, Decl. of L. Melching and Ex. 1 attached thereto.] In this grievance, plaintiff complained that he had become ill from toxic fumes in his cell but had been denied emergency medical treatment at the prison's medical clinic by defendants Blackman and Klipa. The relief requested was: (1) timely adjudication of his claim, (2) defendant Blackman's license number; (3) removal of defendant Blackman from the medical clinic; and (4) an examination by a physician. This grievance was denied at the informal level on November 20, 1998 because plaintiff did not appear to be suffering in any way. Plaintiff was advised that he could make a sick call request if he wanted to be medically examined. Plaintiff indicated he was dissatisfied with this

result because defendant Blackman and Klipa were deliberately indifferent to his serious medical needs.

At the formal level, the examiner indicated that no further action was necessary because an investigation had revealed that the fumes were not toxic and that plaintiff had been removed to fresh air as was appropriate under the circumstances. However, plaintiff was still dissatisfied because he had not been seen by a staff physician and had not been paid $500 per day that he was not medically examined. Plaintiff's grievance was partially granted at the second appeal level. As a result, plaintiff was examined by a physician on March 5, 1999, who determined that plaintiff's respiratory system was normal. However, plaintiff was dissatisfied with this result because defendants Blackman and Klipa were deliberately indifferent to his medical needs, defendant Blackman had not been removed from the medical clinic, and he had not been compensated for the delay in receiving medical treatment. At the director's level, plaintiff's grievance was denied for failure to provide convincing proof that defendants Blackman or Klipa acted inappropriately under the circumstances and because plaintiff's request for a medical examination had already been granted.

As defendants point out, it is true that plaintiff does not specifically name defendants Fox, Pyle, and Alsip in either of his grievances or in his responses at the various levels of review. Therefore, plaintiff did not exhaust his administrative remedies as to these defendants under the Sixth Circuit's decision in *Curry*. Under the Eleventh Circuit's approach in *Brown*, it is also somewhat questionable as to whether plaintiff's grievances included all relevant information that he had or could reasonably obtain at the time. Plaintiff made no specific complaints about the conduct of defendants Fox, Pyle and Alsip ever after he was advised of their identities and their involvement in the spraying of the pesticide on the day in question. Nor did plaintiff's grievances indicate any dissatisfaction with the facts uncovered by the prison staff during the course of the grievance procedure. For example, plaintiff did not state that he believed defendants Fox, Pyle and Alsip acted improperly even after he was advised of the results of internal inquiries by prison staff which indicated where and how the pesticide was disbursed. Plaintiff also did not object to staff's conclusion that plaintiff was not and could not have been exposed to toxic levels of pesticide because the pesticide was sprayed on the ground and the intake for the facility's air conditioning system was on the roof. Under these circumstances, it did not appear likely that plaintiff intended to pursue claims against these defendants for deliberate indifference to his health and safety. Nor does it appear likely that plaintiff can succeed on a claim for deliberate indifference to his health and safety if the facts as discovered by the prison staff during the administrative process are proved to be true.

■ On the other hand, plaintiff's grievances did present the relevant factual circumstances giving rise to a potential claim and did request the identities of the individuals directly responsible for spraying the pesticide. This was sufficient to put prison officials on notice of possible problems with these individuals. Plaintiff also requested that the prison conduct an investigation of the facts. As a result, the facts were investigated and developed, and the prison had an opportunity to exercise its discretion or correct any errors as appropriate under the circumstances. Under the facts presented, there is nothing to indicate that officials would have done anything differently if plaintiff pursued more specific claims against the individuals re-

sponsible for the spraying of pesticides. In other words, plaintiff's grievances were sufficient under the circumstances to put the prison on notice of the potential claims and to fulfill the basic purposes of the exhaustion requirement. As long as the basic purposes of exhaustion are fulfilled, there does not appear to be any reason to require a prisoner plaintiff to present fully developed legal and factual claims at the administrative level. Moreover, the Ninth Circuit has under other but somewhat analogous circumstances required liberal construction of claims submitted by *pro se* prisoners and instructed that *pro se* prisoner plaintiffs should be given any benefit of the doubt. *See, e.g., Klingele v. Eikenberry,* 849 F.2d 409, 413 (9th Cir.1988). Without further guidance from the Supreme Court or the Ninth Circuit on the standard that should be applied in determining whether prison grievances are factually sufficient to satisfy the exhaustion requirement in section 1997e(a), this Court cannot conclude that petitioner has under the facts presented failed to exhaust his administrative remedies with respect to his deliberate indifference claims against defendants Fox, Pyle and Alsip.

### Conclusion

Based on the foregoing, this Court construes defendants' Motion for Summary Judgment on the issue of exhaustion as a nonenumerated motion to dismiss and concludes that the motion to dismiss must be denied. Grievances pursued by plaintiff during the administrative grievance process were sufficient under the circumstances to satisfy the exhaustion requirement in Title 42, United States Code, section 1997e(a). Accordingly, IT IS HEREBY ORDERED THAT defendants' Motion for Summary Judgment [Doc. No. 50], which the Court construes as a non-enumerated motion to dismiss, is hereby DENIED.

IT IS SO ORDERED.