**Richard PEARSON, Plaintiff,**

v.

**Donald VAUGHN, et. al., Defendants.**

No. CIV. A. 97–6942.

United States District Court, E.D. Pennsylvania.

June 26, 2000.

Paul Hetznecker, Hetznecker & Meehan, Philadelphia, PA, for Plaintiff.

Dalinda E. Carrero, Office of Atty. General, Philadelphia, PA, for Defendants.

### *EXPLANATION & ORDER*

ANITA B. BRODY, District Judge.

Plaintiff Richard Pearson ("Plaintiff"), an inmate currently housed at the State Correctional Institution at Somerset ("Somerset") and formerly incarcerated at the State Correctional Institution at Graterford ("Graterford"), brought this suit under 42 U.S.C. § 1983 against Graterford officials, Superintendent Donald Vaughn, Deputy Superintendent William Widner, Deputy Superintendent Thomas Stachelek, and Unit Manager John Murray. Plaintiff Pearson claims that when housed at Graterford in 1996, defendants failed to protect him against attack by other inmates in violation of his Eighth Amendment rights. Plaintiff contends that defendants violated his Eighth Amendment right to be free

from cruel and unusual punishment by housing him in the general population at Graterford and failing to place him in administrative custody in February 1996, although he was stabbed when incarcerated in general population at Graterford in 1994. Plaintiff seeks money damages. Defendants Vaughn and Murray move for summary judgment.[1]

## I. PROCEDURAL HISTORY

Plaintiff filed his *pro se* complaint on November 7, 1997. On April 13, 1998, I granted plaintiff's motion for appointment of counsel. Defendants Vaughn and Murray filed their motion for summary judgment on September 3, 1999. Plaintiff's response was filed on October 5, 1999. In plaintiff's response to defendants' argument that plaintiff had failed to exhaust his available administrative remedies as required by the Prison Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e(a), plaintiff contended that he was not required to exhaust his administrative remedies. Plaintiff argued that the use of the administrative process would be futile because the grievance procedure could not provide him with the monetary relief that he seeks in this case.

On February 15, 2000, the Third Circuit issued its opinion in *Nyhuis v. Reno*, 204 F.3d 65 (3d Cir.2000). On March 9, 2000, because plaintiff's futility argument was rejected in *Nyhuis*, I ordered plaintiff to show cause why this case should not be dismissed for failure to exhaust available

administrative remedies. On March 24, 2000, plaintiff submitted a supplemental response regarding the exhaustion issue. Defendants filed a reply on April 6, 2000. In their reply, defendants argue that because plaintiff has failed to exhaust his administrative remedies, plaintiff's complaint should be dismissed. (Defs. Reply at 4, 6)

On April 24, 2000, I held a hearing regarding whether plaintiff exhausted his administrative remedies, specifically to address the February 27, 1996 and March 5, 1996 Consolidated Inmate Grievance System forms ("grievance rejection") that plaintiff attached to his supplemental response.

## II. FACTS[2]

Plaintiff was housed at Graterford, on three separate occasions, in 1994, 1995 and 1996. In March 1994, while imprisoned at Graterford in general population,[3] he was stabbed six times by several inmates in a hallway corridor.[4] As a result of his injuries, plaintiff was hospitalized. According to plaintiff, the Graterford Program Review Committee ("PRC") subsequently determined that he should be removed from, and never returned to, the general population at Graterford because of the danger of another attack on his life. In August or September 1994, plaintiff was transferred to State Correctional Institution at Dallas ("Dallas") and subsequently paroled. In February 1995, he was arrested for a parole violation and housed at Graterford for

---

1. Defendants Vaughn and Murray bring this motion for summary judgment. These same defendants filed an answer to plaintiff's complaint. Plaintiff's response discusses only these defendants.

2. I ordered the parties to submit a joint stipulation of facts by June 9, 2000. To date, I have not received such a stipulation. On June 8, 2000, defendants provided their proposed stipulation of facts to my chambers. Defendants attached a letter stating that they were unable to contact plaintiff's counsel regarding a joint stipulation. Rather than delay the resolution of defendants' motion for summary judgment, I have set forth the following

facts. Many of the facts are undisputed and when in dispute, I have accepted plaintiff's version of events, drawing all reasonable inferences in plaintiff's favor.

3. In 1994, plaintiff was housed on B–Block, the same unit where he was housed when he returned to Graterford in 1996. (Pearson Dep. at 21, 67).

4. The 1994 attack was the basis of a suit filed by plaintiff in 1996, which was dismissed as barred by the applicable statute of limitations. (Defs. Mot. Summ. J. at 2)

approximately 2–3 weeks, without incident,[5] before being transferred to State Correctional Institution Camp Hill ("Camp Hill") for classification.

While at Camp Hill, plaintiff signed two Acknowledgment of Orientation forms in which plaintiff indicated that he did not need separation from any named inmates at Camp Hill or any other state institution. (Defs. Mot. Summ. J. Ex. D–5 and Ex. D–6). According to plaintiff, he signed these forms because he did not know the names of the inmates from whom he needed to be separated. In addition, plaintiff believed that his only enemies were housed at Graterford and because of the 1994 assault he would not be returned to Graterford. On plaintiff's Diagnostic Classification Report, he signed his name under the words "no enemies." (Defs.Mot.Summ. J. Ex. D–4). Plaintiff then left Camp Hill and returned to Dallas.

On February 8, 1996, plaintiff was moved from Dallas to Graterford for a parole board hearing, and placed in the general population on B–Block. Defendant Murray was B–Block Unit Manager. According to plaintiff, he told Murray about the 1994 assault at Graterford.[6] Murray told plaintiff that he would be double-locked in this cell until he left Graterford. Plaintiff did not identify the particular inmates from whom he sought separation. On February 9, 1996, plaintiff attended his parole board hearing. Following the hearing, plaintiff discovered that his cell was no longer double-locked. Plaintiff again told defendant Murray that he was concerned about being housed in general population. During this conversation, plaintiff requested that he be returned to Dallas and until such transfer occurred, that he be double-locked in his cell or placed in administrative custody. Plaintiff claims that defendant Murray responded that plaintiff had been cleared for admittance into the general population, and there was no need for plaintiff to be placed in administrative custody.

On February 21, 1996, plaintiff was stabbed in the prison law library by three unknown inmates. Following the incident, plaintiff was treated for three puncture wounds on the back of his left shoulder blade. After the attack, plaintiff was interviewed by prison officials from the security office. He told them that he had been stabbed at Graterford in 1994. During the interview, plaintiff alleges that the security officers learned that plaintiff's custody records were still at Dallas. According to plaintiff, the security officers told him that he should never have been housed in general population at Graterford. Following the stabbing, plaintiff was placed in administrative custody. After he was released from medical hold, plaintiff returned to Dallas.

Plaintiff testified at his July 1999 deposition that he did "not recollect" filing a grievance requesting not to be housed in general population prior to the February 21, 1996 incident. (Pearson Dep. at 83). At the April 24, 2000 hearing,("hearing"), plaintiff testified that on February 9, 1996, he filed a grievance claiming that he should be removed from general population and placed in administrative custody. (Tr. 28–29, 45–46, 48, 51). Plaintiff testified that he did not receive copies of "a lot of the grievances" he filed. (Tr. at 26).[7]

---

5. When plaintiff was housed at Graterford in 1995, plaintiff was on the "New Side." The "New Side" housing blocks, G and H, are separate from the rest of the prison. (Pearson Dep. 48–50). In March 1994 and in February 1996, the dates when plaintiff was stabbed, he was housed on the "Old Side," on B–Block. (Pearson Dep. at 49, 67).

6. According to plaintiff, he told two unknown officers that he had been previously harmed at Graterford. These individuals are not named as defendants in this case.

7. I gave plaintiff until May 12, 2000 to supplement the record by providing the court with a copy of the grievance filed February 9, 1996 and any other documents relevant to the exhaustion issue. Plaintiff did not produce any documents.

On a grievance rejection form dated February 27, 1996, approximately one week after the incident, Mary Ann Williams, ("Williams"), grievance coordinator at Graterford, wrote "Mr. Pearson, Your custody level is not addressable under the grievance process. You should inform your counselor and security of your desire to remain under AC status " (Hearing Ex. B). Robert S. Bitner, ("Bitner"), Chief Hearing Examiner at the Department of Corrections, testified that administrative custody is considered a custody level. (Tr. at 82). On the bottom of a grievance rejection form dated March 5, 1996, Williams wrote "Mr. Pearson, You have already filed the same grievance. There is no need to file another one." (Hearing Ex. B1). Plaintiff testified that he may have filed a second grievance requesting to be removed from general population and placed in administrative custody and in response, he received the March 5, 1996 grievance rejection. (Tr. at 32). On March 4, 1996, plaintiff filed Grievance No. 0617–96 requesting that he be returned to Dallas because he feared for his safety at Graterford. (Defs. Mot. Summ. J. Ex. D–11; Hearing Ex. C). On March 7, 1996, Williams responded that plaintiff would remain at Graterford until medical hold was lifted. (Defs. Mot. Summ. J. Ex. D–11; Hearing Ex. D). Plaintiff did not appeal this response. Bitner testified, at the April 24, 2000 hearing, that he is responsible for handling all inmate grievance and misconduct appeals to final review. (Tr. at 71). Bitner also testified that based on his review of plaintiff's records, plaintiff did not file to final review a grievance appeal claiming that he had should have been placed in administrative custody or that he

should have been transferred to another institution. (Tr. at 81).

On March 5, 1996, plaintiff wrote to defendant Vaughn regarding the February 21, 1996 stabbing, requesting that Vaughn inform his family about the incident and that plaintiff be permitted to make a telephone call to his family. (Defs.Mot.Summ. J. Ex. D–12).

## III. DISCUSSION

Defendants Vaughn and Murray have moved for summary judgment. In their motion for summary judgment, defendants argue that: 1) plaintiff's claims should be dismissed because he failed to exhaust administrative remedies; 2) the Eleventh Amendment bars damages against defendants Vaughn and Murray in their official capacity;[8] 3) defendants Vaughn and Murray did not violate plaintiff's constitutional rights; and 4) defendants Vaughn and Murray are entitled to qualified immunity.

### A. Failure to Exhaust

The PLRA, in relevant part, provides that:

> No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison or other correctional facility until such administrative remedies as are available are exhausted.

42 U.S.C. § 1997e(a).

The Pennsylvania Department of Corrections has created a Consolidated Inmate Grievance Review System, DC–ADM 804 (effective October 20, 1994). Section VI, Procedures, sets forth a three-step formal grievance procedure. See DC–ADM 804 Section VI.[9]

---

8. In plaintiff's response to defendants' motion, plaintiff acknowledges· that monetary damages are not available against defendants in their official capacities. Therefore, summary judgment will be granted as to plaintiff's claims for monetary damages against defendants in their official capacities.

9. First, a plaintiff-inmate must file a written grievance for initial review to the Facility/Regional Grievance Coordinator within fifteen days after the events upon which the grievance is based. See DC–ADM 804 VI. B.2. Extensions of time may be granted for good cause. See id. Within ten working days of receipt of the grievance by the Grievance Officer, "the grievant shall be provided a written

■ Before filing a federal lawsuit, a plaintiff-inmate must exhaust his administrative remedies, even if the ultimate relief sought is not available through the administrative process. *See Nyhuis v. Reno*, 204 F.3d 65, 71 (3d Cir.2000) (stating that the PLRA exhaustion requirement applies to *Bivens* actions); *Booth v. Churner*, 206 F.3d 289, 300 (3d Cir.2000) (stating that the PLRA exhaustion requirement applies to § 1983 actions). "Compliance with the administrative remedy scheme will be satisfactory if it is substantial." *Nyhuis*, 204 F.3d at 77–78.

Defendants argue that plaintiff's failure to exhaust his available administrative remedies as required by § 1997e(a) mandates dismissal of this action. Plaintiff responds that he has exhausted his administrative remedies.[10] Plaintiff testified that he filed a grievance on February 9, 1996, asking prison officials to remove him from general population and place him in administrative custody. (Tr. at 28–29,45–

46, 48, 51). Plaintiff contends that Williams was responding to plaintiff's February 9, 1996 grievance in the February 27, 1996 grievance rejection. Therefore, plaintiff argues that he has exhausted his administrative remedies because he was told by Williams that his custody status was not addressable under the grievance process. Defendants argue that the February 27, 1996 rejection was not written in response to plaintiff's alleged February 9, 1996 grievance.

■ Considering the record before me, I determine that plaintiff has substantially complied with his available administrative remedies.[11]

The record supports plaintiff's assertion that the February 27, 1996 rejection was issued in response to plaintiff's February 9, 1996 grievance requesting to be removed from general population and placed in administrative custody.[12] In the Febru-

response to the grievance...." *Id.* at B.4. Second, an inmate may appeal this initial determination, in writing, to the Facility Manager/Community Corrections Regional Director within five days from the inmate's receipt of the decision. *See id.* at C.2. The intermediate review personnel have ten working days to notify the inmate of the decision. *See id.* at C 4. Third, an inmate may appeal the disposition of an appeal from initial review to the Central Office Review Committee ("CORC") within seven days of receiving the decision. *See id.* at D.1. "Final review will not be permitted until the inmate has complied with all procedures established for Initial Review and Appeal from Initial Review. Exceptions may be made for good cause." *Id.* at D.2. The CORC must issue a decision within twenty-one days after receipt of an inmate's appeal. *See id.* at D.7.

10. In plaintiff's supplemental response, although not well-articulated by plaintiff, it appears that he is arguing plaintiff substantially complied with DC–ADM 804, and therefore he should be permitted to bring his suit in federal court.

11. The Third Circuit has not yet clearly articulated whether the PLRA exhaustion requirement creates an affirmative defense or a condition precedent to filing. Defendants did not assert plaintiff's failure to exhaust as an affir-

mative defense in their answer. If an affirmative defense, the defendants have the burden of pleading and proving the defense in a motion for summary judgment or at trial. *See Williams v. Runyon*, 130 F.3d 568, 573 (3d Cir.1997) (stating that in the context of a Title VII case, the failure to exhaust administrative remedies is an affirmative defense). An inmate's failure to comply with the PLRA's exhaustion requirement constitutes an affirmative defense. *See e.g., Massey v. Helman*, 196 F.3d 727, 735 (7th Cir.2000); *Jenkins v. Haubert*, 179 F.3d 19, 29 (2d Cir.1999); *Jackson v. District of Columbia*, 89 F.Supp.2d 48, 57 (D.D.C.2000). If a condition precedent to filing suit, plaintiff has the burden of proof. *See Jackson*, at 55 (noting that the Sixth Circuit requires inmate-plaintiffs to allege and show that they exhausted their administrative remedies and to attach documentary evidence of exhaustion to their complaint). As the discussion in this order will demonstrate, regardless of upon whom the burden is placed, plaintiff has exhausted his administrative remedies as to his claim that he should have been removed from general population and placed in administrative custody.

12. In addition to plaintiff's testimony that he filed a grievance on February 9, 1996, seeking removal from general population and placement in administrative custody, other evidence on the record supports his assertion.

ary 27, 1996 document, Williams referred to plaintiff's "desire to remain under AC status."[13] Defendants contend that Williams was responding to a request by plaintiff to remain in administrative custody after already being housed there; not a request to be moved from general population to administrative custody prior to the stabbing. However, I do not find this argument convincing. Rather, as plaintiff argues, the phrase, "remain under," seems to indicate that plaintiff sought to be placed in administrative custody and remain there until he was returned to Dallas.[14] Furthermore, despite their claim that Williams was responding to a grievance filed by plaintiff seeking to stay in administrative custody after the stabbing, defendants have not produced documentary evidence of such a grievance.[15] The record before me supports plaintiff's assertion that Williams' February 27, 1996 rejection was responding to plaintiff's February 9, 1996 grievance.

Because Williams told plaintiff that his grievance regarding his desire to be removed from the general population and placed in administrative custody was "not addressable under the grievance process," defendants cannot assert in this lawsuit that plaintiff failed to exhaust this claim.[16] *See Miller v. Tanner* 196 F.3d 1190, 1194 (11th Cir.1999) (determining that although an inmate-plaintiff failed to appeal the denial of his grievance, plaintiff exhausted his administrative remedies because plaintiff was told "[w]hen any grievance is terminated at the institutional level you do not have the right to appeal. The above listed grievance(s) is closed."). To the extent possible, plaintiff complied with the February 27 grievance rejection. As instructed by Williams, plaintiff spoke to his counselor. (Defs. Mot. Summ. J. at Ex. D-11; Ex. C). Based on the record, plaintiff has substantially complied with the grievance procedure set forth under DC-

In plaintiff's deposition, he testified that on that date, his cell "was no longer double-locked." (Pearson Dep. at 72). Plaintiff testified that he then asked defendant Murray to be placed in administrative custody. (Pearson Dep. at 78–80). This supports plaintiff's testimony that his grievance requested that he be placed in administrative custody. Furthermore, in plaintiff's March 4 grievance, plaintiff states that he has "already written you three or four grievances." (Hearing Ex. C). Arguably, plaintiff's February 9, 1996 grievance is one of the grievances to which plaintiff refers.

13. The fact that the grievance rejection was dated February 27, 1996 does not necessarily indicate that the rejection was not in response to plaintiff's February 9, 1996 grievance. Although a grievance officer has ten working days to respond to an inmate's grievance, Bitner testified that no time limit exists when a response to a grievance will be in the form of a grievance rejection. (Tr. at 88–89).

14. In his deposition, plaintiff testified that he asked defendant Murray to be placed in administrative custody until he was transferred back to Dallas. (Pearson Dep. at 79). In his grievance, plaintiff may similarly have asked that he be placed in administrative housing

and remain there until he was returned to Dallas.

15. I recognize that plaintiff has not provided a copy of the February 9, 1996 grievance. I also note, however, plaintiff's testimony that he did not receive copies of numerous grievances he filed.

16. It is somewhat unclear what steps defendants contend that plaintiff should have taken following receipt of this rejection. Regardless, plaintiff has exhausted his administrative remedies. At the hearing, defendants asserted that after plaintiff spoke to his counselor, if he was not satisfied with the outcome, then he should have refiled his grievance explaining that he followed Williams' instruction, but the problem still exists. After receiving a rejection stating that his custody status was not addressable, I determined that plaintiff is not required to refile. Even if required to refile, plaintiff testified that he may have filed a second grievance regarding his custody status and that the March 5, 1996 rejection was in response to such a grievance. (Tr. at 32). To the extent defendants argue that plaintiff should have completed steps two and three of the DC–ADM 804 grievance process; plaintiff is relieved of the requirement that he pursue his grievance to final review.

ADM 804.[17]

Having determined that plaintiff has exhausted his administrative remedies with respect to his claim that he should have been removed from general population and placed in administrative custody before the stabbing on February 21, 1996, I will evaluate plaintiff's Eighth Amendment claims.

### B. *Eighth Amendment*

In order to bring a successful § 1983 claim, a plaintiff must demonstrate: (1) that the challenged conduct was committed by a person acting under color of state law, and (2) that the conduct deprived the plaintiff of a right, privilege, or immunity secured by the Constitution or federal law. *See Piecknick v. Pennsylvania*, 36 F.3d 1250, 1255–56 (3d Cir.1994); *Carter v. City of Philadelphia*, 989 F.2d 117, 119 (3d Cir.1993). It is undisputed that defendants were acting under color of state law. Therefore, the issue is whether defendants violated plaintiff's Eighth Amendment rights. I will first address plaintiff's claim that defendant Vaughn violated his Eighth Amendment rights. Second, I will evaluate plaintiff's claim that defendant Murray violated plaintiff's Eighth Amendment rights by failing to protect him against an attack by unknown inmates.

### 1. *Vaughn*

■ Liability under § 1983 cannot be imposed vicariously or under the grounds of respondeat superior. *See Rode v. Dellarciprete*, 845 F.2d 1195 (3d Cir.1988); *Hampton v. Holmesburg Prison Officials*, 546 F.2d 1077, 1082 (3d Cir.1976). A § 1983 defendant's conduct must have a close causal connection to plaintiff's injury for liability to attach. *See Martinez v. California*, 444 U.S. 277, 285, 100 S.Ct. 553, 62 L.Ed.2d 481 (1980). A defendant must have participated in or had knowledge and acquiesced in the alleged violation. *See Robinson v. City of Pittsburgh*, 120 F.3d 1286, 1293 (3d Cir.1997). Allegations of participation or actual knowledge and acquiescence must be made with particularity, *Rode*, at 1207, and the mere fact that a defendant may hold a supervisory position is insufficient to find liability, *Wilson v. Horn*, 971 F.Supp. 943, 947 (E.D.Pa. 1997).

■ To show personal involvement by defendant Vaughn, plaintiff points to deposition testimony of defendant Vaughn that he signed the Extraordinary Occurrence Report outlining the 1994 stabbing of plaintiff. (Vaughn Dep. at 28). Plaintiff also asserts that "as superintendend (sic) had the responsibility to ensure that plaintiff was not placed back in general population" when he returned to Graterford. (Plaintiff. Resp. at 13). Plaintiff also states Vaughn was "in charge of the institution at Graterford." (Plaintiff. Resp. at 13). Defendants assert that defendant Vaughn cannot be held liable under Section 1983 because he was not personally involved in the alleged constitutional deprivation.

Plaintiff has not offered any evidence demonstrating that Vaughn has personal involvement in the alleged violation of plaintiff's Eighth Amendment rights. With respect to the 1996 incident, Vaughn stated that he was not involved in deciding plaintiff's placement in general population. (Vaughn Dep. at 83). Both plaintiff and Vaughn testified that before the February 21, 1996 incident, plaintiff did not contact Vaughn about his desire to be removed from general population. (Pearson Dep. at 83; Vaughn Dep. at 77). Plaintiff's reliance on defendant Vaughn's supervisory role is not an appropriate basis for liability in this case. Therefore, because plaintiff has failed to show any participation, knowledge or acquiescence in the alleged constitutional violation, I will grant summary judgment as to defendant Vaughn.

17. In 1994, plaintiff completed the three-step grievance procedure. Significantly, at that time, unlike in 1996, plaintiff was never told that his claim was not grievable under the grievance process. (Tr. at 66).

### 2. *Murray*

 Plaintiff asserts that defendant Murray violated his Eighth Amendment right by failing to protect him from the February 21, 1996 attack. A prison official has a duty to protect inmates from attacks by other inmates. *See Farmer v. Brennan*, 511 U.S. 825, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994). To prevail on a failure to protect claim, an inmate must make two showings. First, an inmate must show that "he is incarcerated under conditions posing a substantial risk of serious harm." *Id.* at 834, 114 S.Ct. 1970. Second, an inmate must show that the official "knows and disregards an excessive risk to inmate health and safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 837, 114 S.Ct. 1970. To survive a summary judgment motion, a plaintiff must show "sufficient evidence of (1) a substantial risk of serious harm; (2) the defendants' deliberate indifference to that risk; and (3) causation." *Hamilton v. Leavy*, 117 F.3d 742, 746 (3d Cir.1997) (internal citations omitted).

#### a. Substantial risk of serious harm

A prisoner must demonstrate that "he is incarcerated under conditions posing a substantial risk of serious harm." *Farmer* 511 U.S. at 834, 114 S.Ct. 1970. In determining whether the risk of an inmate being assaulted by other inmates is suffi-ciently serious to trigger constitutional protection under the Eighth Amendment, "the focus must be, not the extent of the physical injuries sustained in the attack, but rather the existence of a substantial risk of serious harm." *Thomas v. Vaughn*, No. 97–6929, 1998 WL 647270 * 5 (E.D.Pa. September 21, 1998) (internal citations omitted). Defendants claim that plaintiff's general fear for his safety does not establish a substantial risk of serious harm. In support of this assertion, defendants refer to two cases in which courts have held that a general fear of harm is not sufficient to establish that plaintiff faced a substantial risk of serious harm. *See Turner v. Bunn*, No. 96–35383, 1997 WL 51558 *2 (9th Cir. Feb.6, 1997) (unpublished disposition) and *Davis v. Scott*, 94 F.3d 444, 447 (8th Cir. 1996).[18]

In this case, plaintiff has presented evidence upon which a factfinder could conclude that plaintiff was subjected to a substantial risk of serious harm. Plaintiff told defendant Murray that he had suffered a serious assault at Graterford when housed in general population in 1994 and feared for his safety in general population. At defendant Murray's deposition, he testified that he would have placed plaintiff in administrative custody if plaintiff had asked him to do so. (Murray Dep. at 40). Plaintiff testified that prison officials from the security office told plaintiff that he should not have been housed in general population because he was attacked at Graterford

---

18. In *Turner*, a inmate who was a material witness against his former cellmate, claimed that prison officials failed to protect him by placing him in general population. 1997 WL 51558 *2. According to the inmate, he notified officials that his cellmate had friends at the prison and that he feared for his safety, however, he did not identify those inmates whom he feared. *See id.* Plaintiff was subsequently attacked. *See id.* The court determined that "plaintiff had expressed only a general fear of harm by other inmates and failed to create a general issue of triable fact as to the risk of serious harm." *Id.*

Similarly, in *Davis*, an inmate alleged that prison officials had failed to protect him from an assault by another inmate. 94 F.3d at 445. The inmates on plaintiff's enemies list were no longer incarcerated at the prison. *See id.* at 446. However, the inmate told prison officials that he believed friends of his departed enemies would try to harm him if the inmate was returned to general population. *See id.* When returned to general population, the inmate was hit on the back of his head. *See id.* The court held that because plaintiff had not provided the prison officials with the names of inmates whom he feared, he had not demonstrated that a specific threat to his safety existed. *See id.* Unlike the facts at issue in *Turner* and *Davis*, plaintiff had been seriously harmed while housed in general population at Graterford.

in 1994. (Pearson Dep. at 90–91). Therefore, plaintiff has created a genuine issue of material fact as to whether plaintiff faced a substantial risk of serious harm.

### b. Deliberate indifference

Plaintiff must also show that the harm suffered resulted from defendant Murray's deliberate indifference to plaintiff's safety. *See Hamilton*, 117 F.3d at 747. Plaintiff must present evidence 1) that the defendant was aware of facts from which he could infer a substantial risk of serious harm and 2) that defendant actually drew that inference. *See Farmer*, 511 U.S. at 837, 114 S.Ct. 1970. When evaluating whether a prison official was deliberately indifferent, a court must "focus [on] what a defendant's mental attitude actually was (or is), rather than what it should have been (or should be)." *Hamilton*, 117 F.3d at 747 (quoting *Farmer*, 511 U.S. at 837, 114 S.Ct. 1970).

Defendants contend that defendant Murray did not act with deliberate indifference by failing to place plaintiff in administrative custody. In support of this contention, defendants argue that because plaintiff's alleged comments did not provide Murray with the names of particular inmates whom he feared would harm him, defendant Murray did not act with deliberate indifference to plaintiff's safety.

Plaintiff testified that he informed Murray, at least twice, that he was stabbed while housed at Graterford in 1994 and was concerned for his safety in general population. When plaintiff requested that he be placed in administrative custody, plaintiff explained that he had suffered a serious assault at Graterford. Defendant Murray does not recall having any conversation with plaintiff. (Murray Dep. at 25). Murray testified that plaintiff did not request that he be removed from general population. (Murray Dep. at 40). Plaintiff claims that Murray informed plaintiff that he had checked plaintiff's file. Murray told plaintiff that because plaintiff was cleared for general population, housing

plaintiff in administrative custody was unnecessary. However, according to plaintiff, Murray could not have checked his file because his records were still at Dallas. Plaintiff was not placed in administrative custody until after the February 21, 1996 stabbing.

Taking plaintiff's version of the facts as true, I conclude that a genuine question of material fact exists as to whether defendant Murray was deliberately indifferent to plaintiff's safety.

Because a genuine issue of material fact exists regarding the substantial risk of serious harm and defendant Murray's deliberate indifference, granting summary judgment as to defendant Murray is not appropriate.

### C. *Qualified Immunity*

 Defendant Murray argues that he is shielded from liability by qualified immunity. "As government officials engaged in discretionary functions, [d]efendants are qualifiedly immune from suits brought against them for damages under section 1983, 'insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Sherwood v. Mulvihill*, 113 F.3d 396, 398–99 (3d Cir. 1997) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982)). Thus, *Harlow* provides the court with an objective standard against which to measure the official's actions. When applying this objective standard, the court must resolve two issues: (1) Has the plaintiff stated a violation of a constitutional or federal statutory right? *Siegert v. Gilley*, 500 U.S. 226, 232, 111 S.Ct. 1789, 114 L.Ed.2d 277 (1991); and (2) If so, was that right clearly established, i.e., were the "contours of the right ... sufficiently clear that a reasonable official would understand that what [he or she] is doing violates that right"? *Anderson v. Creighton*, 483 U.S. 635, 640, 107 S.Ct. 3034, 97 L.Ed.2d 523

(1987); *see also Rouse v. Plantier*, 182 F.3d 192, 200 (3d Cir.1999).

Defendant Murray asserts that he did not violate a clearly established constitutional right because plaintiff expressed only a general fear for his safety. At the time of the events at issue, the law clearly established that prison officials have a duty to protect prisoners from attacks by other prisoners. *See Farmer v. Brennan*, 511 U.S. at 833, 114 S.Ct. 1970. "A prison official's deliberate indifference to a substantial risk of serious harm to an inmate violates the Eighth Amendment." *See id.* at 828, 114 S.Ct. 1970. Because plaintiff has presented sufficient evidence to create a genuine issue of material fact as to whether defendant Murray was deliberately indifferent to plaintiff's safety, granting summary judgment on the basis of qualified immunity is not appropriate.[19]

**AND NOW,** this ___ day of June, 2000, **IT IS ORDERED** that:

1. Defendants' motion for summary judgment (Docket Entry # 27) is **GRANTED** as to defendant Vaughn;

2. Defendants' motion for summary judgment (Docket Entry # 27) is **GRANTED** as to plaintiff's claims for money damages against defendant Murray in his official capacity; and

3. Defendants' motion for summary judgment (Docket Entry # 27) is **DENIED** as to defendant Murray in his individual capacity.

---

**19.** The following issues in this case remain unresolved: 1) in plaintiff's complaint, he brings suit against defendants under 42 U.S.C. § 1983, § 1985, § 1986 alleging that defendants violated his right to equal protection under the Fourteenth Amendment; and 2) whether defendants Winder and Stachelek remain part of this litigation.